1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8   RUBBERMAID COMMERCIAL PRODUCTS,   )
    LLC,                                )        Case No. 2:13-cv-02144-GMN-GWF
9                                       )
                    Plaintiff,          )        <u>ORDER AND FINDINGS &</u>
10                                      )        <u>RECOMMENDATION</u>
    vs.                                 )
11                                      )
    TRUST COMMERCIAL PRODUCTS and       )        Motion for Default Judgment (#109);
12  TAIZHOU YINSHAN BRUSH CO., LTD.,    )        Motion for Permanent Injunction
                                        )        (#114); and Motion for Attorneys'
13                                      )        Fees and Costs (#115)
                    Defendants.         )
14  _____ )

15          This matter is before the Court on the Plaintiff's Motion for Default Judgment (#109), filed

16  July 14, 2013.  This matter is also before the Court on Plaintiff's Motion for Permanent Injunction

17  (#114) and Motion for Attorneys' Fees and Costs (#115), filed on July 17, 2014.

18                                      **BACKGROUND**

19          On November 19, 2013, Plaintiff initiated this lawsuit asserting claims for patent and

20  copyright infringement.  *See Dkt. #1.*  Plaintiff alleges that the claims arise from the Defendants'

21  "systematic, brash, and willful infringement and copying of Rubbermaid's intellectual property

22  relating to a number of housekeeping and material handling carts, and the catalog used to sell those

23  products."  *See Dkt. #1.*  Plaintiff asserts that the Defendants Trust Commercial Products and

24  Taizhou Yinshan Brush Co., Ltd., Chinese corporations, conduct business throughout the United

25  States including importing, promoting, distributing, offering to sell, and selling products and works

26  that infringe Rubbermaid's design patents and copyrights.  *See Dkt. #1* at pg. 2-3.  Plaintiff asserts

27  that in November of 2013, the Defendants attended the ISSA/Interclean North America ("ISSA")

28  Trade Show in Las Vegas, Nevada, to facilitate the dissemination of the allegedly infringed

products. *See Dkt. #1* at pg. 2. Plaintiff filed its complaint seeking, among other relief, a permanent injunction. *Id.* at pg. 21.

After filing its complaint, Plaintiff filed an *ex parte* motion for a temporary restraining order and a preliminary injunction to bar the Defendants from distributing, promoting, and offering to sell the allegedly infringed products at the ISSA trade show in Las Vegas, Nevada. *Id.* On November 21, 2013, the Court entered a temporary restraining order pending its decision on Rubbermaid's application for a preliminary injunction. *See Dkt. #13.* Therein the Court found that it has jurisdiction over this matter and over the Defendants, and that this Court is the proper venue for this action. *See Dkt. #13.* The Court found that Plaintiff Rubbermaid was likely to succeed in showing that the Rubbermaid Design Patents and the Rubbermaid Brochure Copyright are owned by Rubbermaid and are valid and enforceable, and that the Plaintiff was likely to succeed on its patent and copyright infringement claims. *Id.* The Court also found that absent an *ex parte* temporary restraining order, the Defendants' promotion and offers for sale of the Accused Products and distribution of the infringing catalog at the trade show in Las Vegas, Nevada, would result in immediate and irreparable injury to the Plaintiff. *Id.* The Court set a preliminary injunction hearing and ordered the Defendants to file their oppositions by November 26, 2013. *Id.*

Pursuant to the Affidavits of Service, Defendants Trust Commercial Products and Taizhou Yinshan Brush Co., Ltd. were personally served on November 20, 2013 by delivering copies of the summons and complaint to Peter Chu, an authorized representative, at the Las Vegas Convention Center. *See Dkt. #19, 20.* In their initial appearance, Defendants requested a fifty (50) day extension of time to respond to the Plaintiff's motion for a preliminary injunction. *See Dkt. #25.* A stipulated order was entered on December 2, 2013, extending the preliminary injunction hearing to February 12, 2014. *See Dkt. #28.* Defendants then filed their Answer on December 11, 2013. *See Dkt. #29.*

The parties subsequently agreed to engage in limited discovery related to the preliminary injunction motion. *See Dkt. #35.* Shortly after the expedited discovery order was entered, Plaintiff alleges that the Defendants delayed producing documents and responding to interrogatories and, when responses were made, they were deficient. *See Dkt. #109* at pg. 8. Plaintiff filed a motion to

compel the Defendants to supplement their discovery responses and to produce witnesses for their scheduled deposition. *See Dkt. #50*. On January 22, 2014, Defendants filed a motion for a protective order to preclude or postpone the scheduled depositions. *See Dkt. #53*. Plaintiff opposed the motion arguing that, without applying for a visa to attend the depositions, the Defendants cited the lack of a visa as a key reason to postpone the depositions. The Court ordered the Defendants to supplement their answers to the interrogatories. *See Dkt. #59*. The Court also ordered that the Defendants' 30(b)(6) witness and Mr. Chu appear for their depositions on or before April 11, 2014. *Id.* The Plaintiff alleges that despite the Court's Order, the Defendants failed to complete their document production and failed to produce witnesses for deposition. *See Dkt. #109* at pg. 9-10.

On January 14, 2014, one day before the Defendants' Response to Plaintiff's motion for a preliminary injunction was due, the Defendants filed an emergency motion requesting to stay the preliminary injunction hearing pending settlement negotiations. *See Dkt. #47*. Plaintiff alleges that while Defendants professed a desire for settlement, they did not respond to the settlement offer that Rubbermaid extended. *See Dkt. #85* at pg. 3 ¶¶ *5-7*. The Court denied the Defendants' motion to stay and ordered them to file a response to Rubbermaid's preliminary injunction. *See Dkt. #52*.

The Defendants discharged their attorneys of record and the Court granted the defense counsels' motion to withdraw on March 28, 2014. *See Dkt. #87*. On May 12, 2014, the Clerk of the Court served the Defendants with an Amended Order to Show Cause (#98) giving the Defendants notice of the Court's order regarding their obligation to retain new counsel and of the consequences for failing to do so. *See Dkt. #98*. After failing to respond to the Court's order and failing to obtain counsel by the specified date, the undersigned issued a report and recommendation that the Defendants' Answer be stricken and a default judgment be entered in favor of the Plaintiff. The report and recommendation was adopted by the District Judge on June 12, 2014. *See Dkt. #99, 105*. The Clerk entered the default of Defendants on June 12, 2014. *See Dkt. #106*. Plaintiff thereupon filed the present motions requesting that this Court (1) enter a default judgment against Defendants; (2) permanently enjoin Defendants from infringing the Patents and Copyrights; and (3) declare this case "exceptional" under the Patent Act, 35 U.S.C. § 285, and award Rubbermaid its

attorneys' fees and costs.  *See Dkt. #109, 114, 115*.

## DISCUSSION

### I.     Plaintiff's Motion for Default Judgment

Pursuant to Fed.R.Civ.P. 55(b), a court has discretion to enter default judgment following the entry of default by the Clerk of the Court.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, a court may consider (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits (collectively, "the *Eitel* factors"). *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  In making its determination, the court assumes that the factual allegations of the complaint are true, except those relating to damages.  *See TeleVideo Sys., Inc. V. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

#### 1.     Prejudice to the Plaintiff

Plaintiff will be prejudiced if a default judgment is not entered against the Defendants.  To the extent that the Defendants have failed to defend this action, Plaintiff will be left without a judicial resolution of its complaint and the remedies it seeks if a default judgment is not entered in its favor.  *See Ringcentral, Inc. V. Quimby*, 711 F. Supp. 2d, 1048, 1058 (N.D. Cal. 2010) (finding that the defendant's failure to appear and otherwise defend the action left plaintiff without a remedy if a default judgment was not entered).  Therefore this factor weighs in favor of entering a default judgment against the Defendants.

#### 2.     Merits of the Claim/Sufficiency of the Complaint

The second and third factors deal with whether the Plaintiff has plead sufficient facts to support a claim on which the Plaintiff may recover.  *See PepsiCo, Inc. V. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2002).  The general rule is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *See also* Fed. R. Civ. P. 8(b)(6).

Here, Plaintiff states claims for patent and copyright infringement.  There are five elements

4

of a patent infringement pleading: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that the defendant has been infringing the patent by making, selling, and using the device embodying the patent; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages. *See K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 20130); *See also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) (finding these elements were enough detail to allow the defendants to answer, which was all that is required under Rule 12(b)(6)). Rubbermaid's Complaint meets these requirements. In its Order (#13), based on the Plaintiff's complaint, the Court found that it has jurisdiction over this matter and over the Defendants, and that this Court is the proper venue for this action. *See Dkt. #13.* The Complaint sufficiently alleges that the Rubbermaid Design Patents and the Rubbermaid Brochure Copyright are owned by Rubbermaid and are valid and enforceable. *Id.* The Complaint further alleges that the Defendants have been infringing the patent, and upon discovering the Defendants' infringing activities and deceit, Rubbermaid notified them that it was terminating their business relationship. *See Dkt. #1* at pg. 8.

The Complaint also sufficiently states a claim for copyright infringement by alleging (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *See Feist Pubs v. Rural Telephone Services Co.*, 499 U.S. 340, 261 (1991). Rubbermaid properly plead that it holds proprietary rights to its Brochure, including a copyright for artwork, photographs, and textual description in the Brochure. *See Dkt. #1* at 24-27. Plaintiff further alleged that the Defendants have copied original elements of the protected brochure without authorization. *See Dkt. #1* at pg. 42-44. Therefore this factor weighs in favor of entering a default judgment against the Defendants.

### 3. Sum of Money at Stake

The fourth *Eitel* factor balances the amount of money at stake in relation to the seriousness of the defendant's conduct. *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175-1176 (C.D. Cal. 2002). The Court should assess whether the recovery sought is proportional to the harm caused by the defendants' conduct. *See Landstar Ranger, Inc. V. Parth Enterprises,*

*Inc.* 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted. *Id*.

Rubbermaid does not seek compensatory or statutory damages, rather it seeks relief in the form of a permanent injunction.  *See Dkt. #115* at pg. 18.  Further, Rubbermaid seeks attorneys' fees and costs related to prosecuting this action against Defendants, which is proportional to the harm caused by the Defendants.  Therefore this factor weighs in favor of entering a default judgment against the Defendants.

### 4.      Possibility of a Dispute Concerning Material Facts

Though the Defendants answered the Complaint, they subsequently demonstrated a complete disregard for the litigation process.  They have been given opportunities to dispute material facts but have failed to comply with the Court's order and refused to retain counsel as required in order to proceed.  Furthermore, upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *See TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987); *See also  Landstar Ranger, Inc. v. Parth Enterprises, Inc.* 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  Since the Clerk has entered an entry of default and Plaintiff has plead sufficient allegation to support its claims, no factual disputes exist that preclude the entry of default judgment.  Therefore this factor weighs in favor of entering a default judgment against the Defendants.

### 5.      Excusable Neglect

The sixth *Eitel* factor considers whether the defendant's default may have been the product of excusable neglect.  *See Landstar Ranger, Inc. V. Parth Enterprises, Inc.* 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  Here, the possibility of excusable neglect is remote.  Default cannot be attributed to excusable neglect where corporate entities had been properly served.  *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001).  In this instance, the Defendants were not only properly served, they also retained counsel and filed their answer in defense of this action.  Therefore this factor weighs in favor of entering a default judgement against the Defendants.

### 6.    Public Policy

Cases should be decided upon their merits whenever reasonably possible.  *Eitel*, 782 F.2d at 1472.  The fact that Rule 55(b) has been enacted, however, indicates that this preference, standing alone, is not dispositive.  *See PepsiC*o, 238 F. Supp. 2d at 1177.  Rule 55(a) allows a court to decide a case before the merits are heard if the defendant fails to appear and defend.  *Id*.  Since the Defendants refuse to defend against this action, the seventh *Eitel* factor does not preclude the entry of default judgment against the Defendants.

Taking all of the *Eitel* factors into consideration, the undersigned recommends that the Plaintiff's motion for default judgment be granted

### II.    Plaintiff's Motion for Permanent Injunction

Upon entry of default judgment, the Court may grant a plaintiff any relief requested in the complaint.  *See Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).  A plaintiff's damages and the judgment must "not differ in kind from, or exceed in amount, what is demanded in the pleadings."  *See* Fed.R.Civ.P. 54(c).  Rubbermaid requested, among other things, that the Court permanently enjoin Defendants and their respective agents, servants, officers, directors, employees and all persons acting in concert with them, directly or indirectly, from infringing, inducing others to infringe, or contributing to the infringement of the Rubbermaid Designs Patents and the Copyright.  *See Dkt. #1* at pg. 21.

Pursuant to 25 U.S.C. § 283, a court may grant a permanent injunction where a patentee has shown (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006).  Here, these factors support a permanent injunction.

First, as the Court has already determined, Plaintiff will suffer irreparable injury in the form of lost market share, loss of control over their valuable intellectual property rights, loss of consumer goodwill, and interference with Plaintiff's ability to exploit the Rubbermaid Design Patents if the Defendants continue to infringe on its patents.  *See Dkt. #13* at pg. 3.  Second, there is

1    no adequate remedy at law because the amount of damages is impossible to ascertain given the

2    unknown impact on Rubbermaid's goodwill and reputation.  Plaintiff alleges that the Defendants

3    refused to produce documents related to sales or offers for sale of the infringed products or

4    documents related to the distribution or dissemination of the sales catalog.  *See Dkt. #115* at pg. 21.

5    This factor therefore also favors the entry of a permanent injunction.

6        Third, as evidenced by the fact that the Defendants are unlawfully using, selling, promoting,

7    and making Plaintiff's patented products, the balance of hardships tips towards the Plaintiff who is

8    suffering due to this infringement.  Defendants face no cognizable hardship in being barred from

9    infringing Rubbermaid's patents and copyrighted work, whereas Plaintiff faces loss of sales and

10    damage to its reputation and goodwill.  Lastly, the public interest would be best served by

11    disallowing an infringer to continue infringing and by providing an adequate remedy for the patent

12    holder who is being wronged.  Public policy "favoring the enforcement of patent rights" will be

13    furthered by the injunction in this case.  *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d

14    1558, 1567 (Fed. Cir. 1996); *See also Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480 (1974)

15    ("The patent laws promote this progress by offering a right of exclusion for a limited period as

16    incentive to investors to risk the often enormous costs in terms of time, research, and

17    development").

18        **III.   Plaintiff's Motion for Attorneys' Fees and Costs**

19        In its prayer for relief, Plaintiff also requested attorneys' fees and costs incurred in bringing

20    and maintaining this action.  *See Dkt. #1* at pg. 22.  Attorneys' fees are ordinarily not recoverable

21    absent a specific statutory authority, a contractual right, or aggravated conduct.  *See Alyeska*

22    *Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975).  Under 15 U.S.C. § 1117(a), however,

23    a court may award reasonable attorneys' fees to the prevailing party in "exceptional cases."  *See*

24    *Gracie v. Gracie*, 217 F. 3d 1060, 1068 (9th Cir. 2000).  While the statute does not define the term

25    "exceptional," generally a patent  case is exceptional when the court finds that the defendant acted

26    maliciously, fraudulently, deliberately, or willfully.  *See Earthquake Sound Corp. v. Bumper Indus.*,

27    352 F.3d 1210, 1216 (9th Cir. 2003).  A case may also be exceptional based on the unreasonable

28    manner in which the case was litigated.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*

134 S. Ct. 1749, 1756 (April 29, 2014).  Examples of litigation misconduct rendering a case exceptional include "unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings" and "advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith."  *See Highmark, Inc.* v. *Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1315-16 (Fed. Cir. 2012).

In the context of default, "when a complaint alleges willful infringement and the court subsequently enters default judgment, the court must find for the purpose of attorneys' fees that the infringement was willful.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (following the general rule of law that, upon the entry of default judgement, the court accepts the factual allegations in the complaint as true, the court concluded that when a complaint alleges willful infringement and the court subsequently enters default judgment, the court must find for the purposes of attorneys' fees that the infringement was willful).

In its Complaint, Plaintiff pled that the Defendants willfully infringed Rubbermaid's intellectual property.  *See Dkt. #1* at ¶¶ 45.  Therefore the Court accepts the factual allegations and finds that the infringement was willful.  Plaintiff seeks $306,014.12 in attorneys' fees and $11,177.96 in costs.  This amount reflects the legal fees Plaintiff incurred from October 2013 through July 11, 2014.  *See Dkt. #111* at pg. 7, ¶¶ 21-22.  In support of its request, Plaintiff presents the declarations of Rachael A. Harris, Steven M. Auvil, and James D. Boyle.  Plaintiff also provided the Report of the Economic Survey 2013 prepared by the American Intellectual Property Law Association ("AIPLA"),  a Summary of Squire Patton Boggs, LLP time entries and invoices to Rubbermaid and a Transaction Listing with Billed Amounts from the law firm Holley, Driggs, Walch, Puzey & Thompson ("HDW").

To determine reasonable attorneys' fees, courts in the Ninth Circuit use the "lodestar" method.  Under this method, the court multiplies the number of hours reasonably expended in the litigation by the reasonable hourly rate of the attorney.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-65 (9th Cir. 1995).  In calculating the lodestar figure, the court considers the following factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of employment to the attorney due

1   to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

2   limitations imposed on the client or the circumstances; (8) the amount involved and the results

3   obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the

4   case, if any; (11) the nature and length of the professional relationship with the client; and (12)

5   awards in similar cases. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.3 (9th Cir. 2000)

6   (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

7       The first step in setting reasonable attorneys' fees is to determine the number of hours

8   Plaintiff's attorneys reasonably expended on the litigation. *See Morales*, 96 F.3d at 363-65.  Here,

9   Plaintiff's attorneys allege that they worked on this case for approximately 1,020 hours from

10  October 2013 through July 11, 2014.  According to the declarations and itemized records, attorneys

11  and support staff from Squire Patton Boggs, LLP worked on this case for 902.5 hours, and

12  attorneys and support staff from HDW worked 117.5 hours.  As their detailed records indicate, the

13  attorneys spent these hours preparing numerous pleadings, discovery requests, responses to

14  discovery, emergency motions, and motions and briefs related to the various motions filed in this

15  matter.  The time also included court appearances, pre-filing investigations, conducting invalidity

16  defenses and infringement analyses, legal research, and preparing witnesses for depositions.  In

17  light of the substantial work required as a result of Defendants' failure to fully participate in this

18  litigation and cooperate during discovery, along with the complexity of this action, the total hours

19  Plaintiff claims with regard to the work performed by HDW are not excessive.

20      The Court is concerned, however, by the number of hours allegedly expended by the

21  attorneys and staff of Squire Patton Boggs, LLP.  Specifically, the Court is concerned with

22  counsels' billing in quarter hour increments.  Some courts have found that billing in quarter hour

23  increments is less reliable than tenth-hour billing and risks bill inflation. *See Republican Party of*

24  *Minn. V. White*, 456 F.3d 912, 920 (8th Cir. 2006);  *see also Edwards v. National Business Factors,*

25  *Inc.*, 897 F. Supp 458, 462 (D. Nev. 1995).  Though the Court has no way of verifying the time

26  required to conduct phone calls and other correspondence concerning the case, certain entries can

27  be judged by an objective standard and a few entries appear excessive.  For example, on October

28  28, 2013, Mr. Auvil billed .25 hours for correspondence relating to retention of local counsel and

10

1   strategy.  The Court finds this entry vague in that it could have involved a two minute phone call to

2   confirm local counsel has been retained or a fifteen minute email to local counsel seeking an agreed

3   upon retention rate.  Even with Mr. Auvil's discounted rate, however, the difference in the time

4   entered would amount to being billed $59.50 on a tenth of an hour billing increment versus $148.75

5   on the quarter increment system.  Similarly, Mr. Auvil billed .25 hours to "confer with R. Harris

6   regarding matter", and billed .25 hours for "correspondence with M. Kudo regarding Diageo-

7   Lamina settlement" which the Court finds excessive due to the vague description.  Furthermore,

8   Mr. Thuermer billed 20.75 hours between November 27, 2013 to November 29, 2013 to review and

9   revise Plaintiff's response to Defendants' Response (#25) to Plaintiff's motion for temporary

10  restraining order and preliminary injunction, which the Court finds excessive due to the

11  Defendants' minimal, seven page response.  After reviewing the Summary of Time Entries

12  Invoiced to Rubbermaid by Squires Patton Boggs, LLP,  the Court deducted 138.75 hours from the

13  902.5 hours billed to reach 763.75 hours expended by Squires Patton Boggs, LLP.  The Court

14  therefore finds that 881.25 hours reflects a reasonable number of hours expended by Plaintiff's

15  counsel in this litigation.

16      The second step in setting the reasonable attorneys' fees is to determine a reasonable hourly

17  rate.  Factors relevant to this analysis include (1) the novelty and difficulty of the questions

18  involved, (2) the special skill and experience of counsel, (3) the quality of representation, and (4)

19  results obtained.  *See Morales*, 96 F.3d at 364.  Here, depending on the attorney's experience, the

20  hourly rates of attorneys from Squire Patton Boggs, LLP ranged from the discounted rate of

21  $624.75 to $225.25 per hour.[1]  Similarly, depending on their experience, the support staffs' hourly

22  rates ranged from $250 to $120 per hour.  The rate of attorneys from HDW was between $350 to

23  $390 per hour, and the support staff was billed at $170 per hour.

24      In support of its fees, Plaintiff filed the 2013 AIPLA Report of the Economic Survey Online

25  Access Regarding Billing Rates for Intellectual Property Attorneys, which has been cited by the

26  _____

27      [1]  The Summary of Time Entries Invoiced to Rubbermaid (#120-1) reflect the attorney rates prior to the 15%
    discount.  The calculations and amount requested in the Motion for Attorneys' Fees, however, are based on the
28  discounted attorney rates noted above.

1   U.S. Court of Appeals for the Federal Circuit and many district courts.  *See Dkt. #111-1, 119-2; See*
2   *also Yurman Designs, Inc. V. PAJ, Inc.*. 125 F.Supp.2d 54, 57 (S.D.N.Y. 2000) (finding that
3   AIPLA Survey billing rates in the 75th percentile reflect that 25 percent of attorneys actually
4   reported above that figure, which is permissible because some consideration may be given to the
5   experience, reputation and ability of the attorneys, as well as to the difficulty of the issues presented
6   and the amount at stake in the litigation.); *See also Howes v. Medical Components, Inc.,* 761
7   F.Supp. 1193, 1195-97 (E.D.Pa. 1990) (finding an upward departure from AIPLA survey for
8   intellectual property law practitioners because "a party should be entitled to retain the most
9   competent counsel available, particularly in the highly specialized area of complex patent
10  litigation," and plaintiffs' fees were comparable to those of other firms which handle complex
11  litigation.); *See also Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988).

12      Taking into account the complex nature of intellectual property law, the years of intellectual
13  property law experience, and the discounted hourly rates for the attorneys with Squires Patton
14  Boggs, LLP, the AIPLA survey verifies that the attorneys' fees requested are within the realm of
15  similarly situated attorneys.  The Court therefore finds that considering the experience and training
16  of the attorneys, ranging from twenty to two years of experience in litigating intellectual property
17  disputes, and the complexity of the subject-matter involved in this action, these rates appear to be a
18  reasonable reflection of the difficulty involved and the skill and time required in this case.

19      The final step in determining the reasonable attorneys' fees is to multiply the number of
20  hours reasonably worked by the reasonable hourly rate for each person who performed the work.
21  According to this calculation, the total fee for work completed by the attorneys of HDW is
22  $28,525.50 for 117.50 hours of work.  Of this, Mr. Boyle worked 52.9 hours at a rate ranging from
23  $335 to $350 per hour for a total of $17,293.00.   Mr. Boschee worked 14.9 hours at a rate ranging
24  from $385 to $390 per hour for a total of $5,739.50.  Ms. Jones worked on the case for 45 hours at
25  a rate of $170 per hour for a total of $5,470.00.  Mr. Henderson worked 4.5 hours at a rate ranging
26  from $0 to $230 per hour for a total of $23.00.  The total discounted fee for work completed by the
27  attorneys and litigation support personnel of Squire Patton Boggs, LLP, is $232,820.30 for 763.75
28  hours of work.  Of this, Mr. Auvil worked 73.75 hours at a discounted rate ranging from $624.75 to

$595.00 per hour for a total of $45,093.56.  Ms. Harris worked 256.75 hours at a discounted rate ranging from $352.75 to $335.75 per hour for a total of $87,648.81.  Mr. Thuermer worked 353.75 hours at a discounted rate ranging from $267.75 to $225.25 per hour for a total of $83,294.69.  Ms. Gallagher worked 74.5 hours at a discounted rate of $212.50 per hour for a total of $15,831.25.  Mr. Goth worked 3.25  hours at a discounted rate of $208.25 per hour for a total of $676.81.  Ms. Guthleben worked .25 hours at a discounted rate of $127.50 per hour for a total of $31.88. Mr. Grindle worked 1.25 hours at a discounted rate of $174.25 per hour for a total of $217.80.  Ms. Tsui worked .25 hours at a discounted rate of $102.00 per hour for a total of $25.50.  The total discounted attorney and support staff fees for Squire Patton Boggs, LLP equals $232,820.30.

There is a "strong presumption" that the lodestar figure represents a "reasonable fee" that the court should enhance or reduce only in "rare and exceptional cases."  *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.3 (9th Cir. 2000).  In light of the court's earlier findings, Defendants' repeated failure to comply with the Court's orders and provide evidence in their favor, and the lack of opposition to the Motion for Attorneys' Fees, the Court finds the aforementioned award of fees reasonable.  Thus, the Court will award Plaintiff's attorneys' fees in the amount of $261,345.80 and $11,177.96 in costs, which included long distance telephone charges, food, lodging and travel, court admissions fees, charges for computer-aided legal research, document shipping, and similar expenses.  Accordingly,

## **ORDER**

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Attorneys' Fees and Costs (#115) is **granted**.  Rubbermaid is awarded its reasonable attorneys' fees and costs from the Defendants in the amount of $272,523.76.  Interest on this award shall accrue in accordance with 28 U.S.C. § 1961.

## **RECOMMENDATIONS**

**IT IS HEREBY RECOMMENDED** that the Plaintiff's Motion for Default Judgment (#109) be **granted**.

**IT IS FURTHER RECOMMENDED** that the Plaintiff's Motion for Permanent Injunction (#114) be **granted**.

13

**IT IS FURTHER RECOMMENDED** that the surety bond posted by Plaintiff to secure the preliminary injunction be released upon entry of the permanent injunction.

**IT IS FURTHER RECOMMENDED** that the Patents be found valid and enforceable and the Defendants be found to have willfully infringed Rubbermaid's design patents, U.S. Design Patent Numbers D474570, D618418, D618419, and D487604.

**IT IS FURTHER RECOMMENDED** that the Defendants and their officers, directors, employees, and agents be permanently enjoined, pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65(d), from engaging in infringing activities relating to the infringed products.  In particular, Defendants are permanently enjoined from making, using, offering to sell, selling, or importing into the Unites States products identified as the Accused Products, *i.e.*, the Grandmaid Housekeeping Carts, Bitbar Mobile Work Center, Bitbar Utility Carts, and Bitbar Flat-shelf Carts (collectively, the "Accused Products"), as well as colorable imitations thereof, including without limitation, products sold under the following model numbers: Grandmaid Housekeeping Cart, models 5021, 5022, and 5023; Bitbar Mobile Work Center, models 4031, 4032, and 4033; Bitbar Utility Carts, models 4041 and 4041; and Bitbar Flat-shelf Carts, models 4045 and 4047.

**IT IS FURTHER RECOMMENDED** that the Defendants be found to have willfully infringed Rubbermaid's copyright in the Rubbermaid Brochure.

**IT IS FURTHER RECOMMENDED** that the Defendants and their officers, directors, employees, and agents be permanently enjoined, pursuant to 17 U.S.C. § 502 and Fed. R. Civ. P. 65(d), from engaging in infringing activities relating to the Trust Catalog.  In particular, the Defendants should be permanently enjoined from reproducing, preparing derivative works, or distributing the TRUST PRODUCT CATALOG 2013 (attached as Exhibit 4 to the Declaration of Neil R. Eibeler In Support of Plaintiff's Motion for Temporary Restraining Order and For a Preliminary Injunction (Dkt. 11-5)) without prior Court approval.

**IT IS FURTHER RECOMMENDED** that this Court retain jurisdiction over the parties to the extent necessary to enforce the terms of this Order and the injunctive relief provided herein.

. . .

. . .

14

1

**NOTICE**

2          Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be

3  in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

4  held that the courts of appeal may determine that an appeal has been waived due to the failure to

5  file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit

6  has also held that (1) failure to file objections within the specified time and (2) failure to properly

7  address and brief the objectionable issues waives the right to appeal the District Court's order

8  and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153,

9  1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

10          DATED this 22nd day of August, 2014.

11

12

13                                                          GEORGE FOLEY, JR.
                                                              United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28